UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　　　Plaintiff,<br>　　v.<br>JOHN KANE and ANDRE NESTOR,<br>　　　　　　　　　　Defendants. | Case No. 2:11-cr-00022-MMD-GWF<br><br>ORDER |

## I.   SUMMARY

Defendant John Kane asks the Court to exercise equitable jurisdiction to order funds seized by the Nevada Gaming Control Board ("Gaming Control") to be returned to him long after the charges in this case were dismissed. (Dkt. no. 128.) United States Magistrate Judge George Foley, Jr. issued a Report and Recommendation ("R&R") recommending that the Court decline to exercise jurisdiction. (Dkt. no. 138.) Kane objects to the R&R. (Dkt. no. 139.) The Government has responded (dkt. no. 140) and Kane has replied (dkt no. 141). For the reasons discussed below, the Court agrees with the Magistrate Judge and will adopt the R&R.

## II.   BACKGROUND

### A.   Charges

On January 19, 2011, Kane and his co-defendant were indicted on two counts of conspiracy to commit wire fraud and fraud in connection with computers.[1] (Dkt. no. 12.) The indictment also contains four forfeiture allegations involving "any property which

---

[1] The Government initiated this case by filing a complaint on January 3, 2011. (Dkt. no. 1.) In addition to the conspiracy charges, count 2 of the indictment alleges fraud against Kane and count 3 alleges fraud against his co-defendant Andre Nestor. (Dkt. no. 12.)

constitutes or is derived from proceeds traceable to" the offenses charged in the indictment, seeking "an *in personam* criminal forfeiture money judgment up to $1,500,000.00." (*Id.* at 5-9.) The indictment alleges that, from about April 2009 to September 2009, Defendants devised a way to exploit video poker machines to defraud casinos, which involved changing the playing credits to a higher denomination, accessing the previous winning hand of cards that were wagered at the lowest denominations, and triggering a jackpot without playing or paying at the higher denomination. (*Id.* at 1-2.)

### B.   Seizure of Property

According to Kane, on July 3, 2009, after he won a $10,000 jackpot at the Silverton Hotel and Casino ("Silverton") and before he could be paid, Gaming Control detained him for allegedly committing the fraud asserted in count 2 of the indictment. (Dkt. no. 128 at 2-3.) At the time, he had $27,000 in his pocket ("the Property") and approximately $1,200 in credit on the machine he was playing, which Gaming Control cashed out. (*Id.* at 3.) Gaming Control seized the Property and cash "as evidence." (*Id.*) A criminal action was initiated in Las Vegas Justice Court, where Kane made this initial appearance on September 1, 2009 ("State Case"). (*Id.* at 2.) The State Case was subsequently dismissed in January 2011, when the Government filed a complaint and the indictment was issued in this case. (*Id.* at 3.) Kane contends that the Property belongs to him and was not part of the proceeds of any alleged fraud. (*Id.*)

### C.   Procedural History

In October 2012, in response to Defendants' motions to dismiss, the Magistrate Judge recommended dismissal of counts 2 and 3 of the indictment. (Dkt. no. 86.) The Government initially objected but subsequently moved to dismiss these two counts. (Dkt. no. 110.) The Government later moved to dismiss the remaining conspiracy count without prejudice. (Dkt. no. 119.) Both motions were granted. (Dkt. nos. 111, 120.) The Court issued the final dismissal order on November 25, 2013. (Dkt. no. 120.)

///

Over a year later, on June 10, 2015, Kane filed a motion for return of property taken by Gaming Control and FBI agents.[2] (Dkt. no. 121.) In its response, the Government indicated it would return items seized by the FBI, excluding the money seized by Gaming Control. (Dkt. no. 124 at 1.) At the hearing on the motion, the parties advised the Magistrate Judge that the matter was resolved (dkt. no. 138 at 2); accordingly, the Magistrate Judge denied the motion without prejudice. (Dkt. no. 127.)

Kane's counsel subsequently contacted Gaming Control for the return of the Property. (Dkt. no. 139 at 3-4.) In a letter dated July 31, 2015, Gaming Control informed Kane that he had "thirty (30) days to file a written claim with the State Gaming Control Board (Board) for return of the evidence seized in the above-referenced matter [the State Case]." (Dkt. no. 128 at 9.) The letter also outlines the procedures for resolving any disputed claims to the seized Property pursuant to NRS § 465.110(2)(b). (*Id.*) Kane responded to assert a claim to the Property, as did Silverton. (Dkt. no. 142 at 12-13.) The Government asserts no claim to or interest in the Property. (*Id.* at 27.)

On August 17, 2015, Kane filed a second motion for return of property, seeking a return of the Property ("the Motion"). (Dkt. no. 128.) After a hearing on the Motion, the Magistrate Judge issued the R&R to which Kane now objects.

**III.   DISCUSSION**

The parties do not address the standard of review of the Magistrate Judge's recommendation. The Magistrate Judge issued an R&R because the ruling is equivalent to an order of dismissal for lack of jurisdiction, which is dispositive and may not be finally determined by a magistrate judge. (Dkt. no. 138 at 4 n.2.) This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Where a party timely objects to a magistrate judge's report and recommendation, then the court is required to "make a *de novo* determination of

---

[2]Since then, the items seized by the FBI and the approximately $1,200 credit in the gaming machine have been returned to Kane, leaving unresolved only the $27,000 seized by Gaming Control. (Dkt. no. 142 at 6, 8-9.)

those portions of the [report and recommendation] to which objection is made." 28 U.S.C. § 636(b)(1). In light of Kane's objection, the Court will engage in a *de novo* review to determine whether to accept the Magistrate Judge's R&R.[3]

The Magistrate Judge recommends that the Court decline to exercise jurisdiction over Kane's Motion and deny the Motion without prejudice to Kane, which would allow him to pursue recovery of the Property under state law. (Dkt. no. 138 at 5-6.) Kane contends that the Magistrate Judge is right on the law but wrong in its application. (Dkt. no. 139 at 5-6.) The gist of Kane's argument is that because the Property was seized as "evidence" in this case, and because the Government sought its forfeiture in this action, the Property has a nexus to this case, not the State Action. Kane also raises arguments that go to the merits of his Motion. However, because the Court agrees with the Magistrate Judge's recommendation to decline to exercise equitable jurisdiction, the Court does not address the merits of the Motion.

Kane seeks a return of the Property pursuant to Rule 41(g) of the Federal Rules of Criminal Procedure. Rule 41(g) provides for "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property [to] move for the property's return." Fed. R. Crim. P. 41(g). While Rule 41(g) is generally used to facilitate the return of seized property after an indictment has been filed, "district courts have the power to entertain motions to return property seized by the government when there are no criminal proceedings pending." *Ramsden v. United States*, 2 F.3d 322, 324 (9th Cir. 1993) (referencing Rule 41(e), as amended in 1989, which addressed motions for return of property). Such motions, however, "are treated as civil equitable proceedings and, therefore, a district court must exercise 'caution and restraint' before assuming jurisdiction." *Id.* (quoting *Kitty's East v. United States*, 905 F.2d 1367, 1370 (10th Cir. 1990)).

///

---

[3] Kane contends that the Magistrate Judge "committed clear error;" however, he need not show that a clear error was made in light of the *de novo* standard of review. (Dkt. no. 139 at 8.)

4

To ensure that the district courts refrain "from exercising their equitable jurisdiction too liberally," the Ninth Circuit, like other circuit courts, has adopted four factors for the district court to consider in deciding the threshold question of jurisdiction.[4] *Id.* at 325-26; *see United States v. Comprehensive Drug Testing, Inc.*, 513 F.3d 1085, 1103 (9th Cir. 2008) (noting that the district court may exercise equitable jurisdiction to entertain a Rule 41(g) motion only after analyzing the four-factor test articulated in *Ramsden*). "These factors include: 1) whether the Government displayed a callous disregard for the constitutional rights of the movant; 2) whether the movant has an individual interest in and need for the property he wants returned; 3) whether the movant would be irreparably injured by denying return of the property; and 4) whether the movant has an adequate remedy at law for the redress of his grievance." *Ramsden*, 2 F.3d at 325. If the "balance of equities tilts in favor of reaching the merits" of a Rule 41(g) motion, the district court should exercise its equitable jurisdiction to entertain the motion. *Id.* at 326.

The Court agrees with the Magistrate Judge that a balance of these factors counsels against reaching the merits. The Court accordingly declines to exercise equitable jurisdiction. The first factor — whether the Government has demonstrated a

---

[4] Kane cites to *United States v. Martinson*, 809 F.2d 1364 (9th Cir. 1987), to argue that the Court has a "duty and jurisdiction to return contested property." (Dkt. no. 139 at 9.) Kane's contention ignores the four-factor test adopted by the Ninth Circuit in *Ramsden* to address the threshold question of jurisdiction. And *Martinson* does not support Kane's argument. In that case, local law enforcement officers arrested Martinson based on an outstanding warrant for a federal offense and turned over seized firearms to the Bureau of Alcohol, Tobacco & Firearms ("ATF"). *Martinson*, 809 F.2d at 1365. They soon discovered that the warrant had been recalled and released Martinson. (*Id.* at 1365-66.) ATF, however, did not return the firearms, prompting Martinson to seek a court order for their return under Fed. R. Crim. P. 41. (*Id.* at 1366.) He subsequently appealed the district court's denial of his motion. (*Id.*) During oral argument in connection with his appeal, the government disclosed that ATF had destroyed the firearms pending appeal. (*Id.*) In addressing its jurisdiction to consider Martinson's appeal, the Ninth Circuit found that the district court had jurisdiction to consider motions for return of property even when there are no criminal charges pending and that "[s]uch motions are treated as civil equitable proceedings." (*Id.* at 1366-67.) *Martinson* does not stand for the proposition that Kane advances — that the Court has a "duty" to assume jurisdiction to address motions for the return of property as a matter of course. Moreover, unlike in *Martinson*, the Government did not take actual possession and control of the Property from Gaming Control.

callous disregard for Kane's constitutional rights — is at best neutral. There is no dispute that the Government did not seize the Property, did not take actual possession of the Property after the initiation of this case, and does not claim an interest in the Property. At the hearing before the Magistrate Judge, the Government suggested that because the Property was not seized pursuant to a federal warrant, the Court should allow the dispute to be resolved through the process established under state law. (Dkt. no. 142 at 9.) Kane insists that the Government's contention, if accepted, would allow the Government to abdicate responsibility any time the Government works with state or local agencies.[5] (Dkt. no. 139 at 4.) The Court need not resolve these hypothetical scenarios because evaluation of the first factor is necessarily fact specific.  The Property was seized as "evidence" by Gaming Control in the State Action, which was initiated and only dismissed after the complaint was filed and the indictment returned in this case. The Property was not seized by any agency of the federal government. And Kane did not seek a return of the Property when the State Action was dismissed — he even failed to inquire as to the status of the Property at the time. Kane further argues that the Government in this case sought to forfeit the very Property that the Government claims it did not possess. (*Id.* at 5.) However, as the Government aptly points out, the forfeiture allegations are for a general "criminal forfeiture money judgment up to $1,500,000.00" (dkt. no. 12 at 6-9), not for forfeiture of the Property in particular. (Dkt. no. 140 at 2-3.)

---

[5] Kane also argues that the Government's position is contrary to the holding in *United States v. Wilson*, 540 F.2d 1100 (D.C. Cir. 1976). (Dkt. no. 139 at 9.) The *Wilson* decision is not binding on the Court. Nor does it support Kane's argument.  In that case, while the criminal charges were pending, Wilson filed a motion for return of the seized assets, but the motion was not pursued and was only renewed a year after Wilson was sentenced. *Wilson*, 540 F.2d at 1101-02. About six months after Wilson was sentenced, the balance of the seized money was deposited by the property clerk of the local police department into the account of the District of Columbia. *Id.* The court dismissed the government's argument that the seized asset was held in the District of Columbia's bank account as "an argument of administrative inconvenience," finding that any inconvenience was minor in light of the procedural history of the case. *Id.* at 1104. As the court further reasoned, "[w]hoever holds the money holds it subject to the order of the federal court and is subject to its judgment and the execution thereof." *Id.* at 1104. Moreover, whether the Government took actual possession of the Property is just one fact to consider in determining whether the Government has demonstrated a callous disregard for Kane's constitutional rights; it is not dispositive of the first factor.

This distinction makes a difference in the Court's evaluation of the callousness of the Government's action under the first factor.

There is no dispute that Kane has an interest in the return of the Property, which is a substantial sum of money. The second factor thus favors the exercise of equitable jurisdiction.

However, the third and fourth factors counsel against the exercise of equitable jurisdiction. Kane will not suffer irreparable injury because he has an adequate remedy under state law. In fact, Gaming Control has informed Kane of the process for resolving disputed claims to seized evidence as established in NRS § 465.110(2)(b). Section 465.110(2) provides, in pertinent part, that "evidence seized by an agent of the [Gaming Control] Board which does not result in a complaint charging a violation of the law and evidence for which an order of disposition is not entered pursuant to subsection 1 [addressing disposal of evidence]" must be resolved pursuant to an established process. NRS § 465.110(2). First, Gaming Control must notify potential claimants of their right to file—and their deadline for filing—a claim, which it has done here. NRS § 465.110(2)(a). Where more than one claimant asserts a claim, the dispute must be resolved pursuant to the following process: (1) the claimants may agree on how to divide the evidence, subject to Gaming Control's approval; (2) the claimants may submit the dispute to binding arbitration; or (3) Gaming Control may interplead the evidence. NRS § 465.110(2)(b)(1)-(3). This process has been initiated in this case, thus giving Kane an adequate remedy to pursue a return of his claimed property.

Kane argues that the process established in subsection 1, not subsection 2, of NRS § 465.110 applies.[6] (Dkt. no. 139 at 8.) Subsection 1 provides that "[a]fter the final adjudication of . . . any other complaint involving the seizure of evidence by an agent of

---

[6] Kane insists that Gaming Control would comply with this Court's order regarding the Property. (Dkt. no. 139 at 5.) Gaming Control appeared at the hearing before the Magistrate Judge and represented that it disagrees with Kane's interpretation of the statute, but is "ready and willing" to comply with an order from this Court. (Dkt. no. 142 at 10.) Whether Gaming Control is inclined to comply is of no import. The Court does not base its exercise of equitable jurisdiction on the potential for compliance with its order.

7

the Board, the court may enter an appropriate order disposing of all physical evidence pertaining to the complaint." NRS § 465.110(1).   But the complaint in the State Action was not adjudicated; it was dismissed when federal charges were filed. More important, even assuming that dismissal of the State Action amounts to a "final adjudication," Kane's remedy is to seek relief from the court in the State Action pursuant to NRS § 465.110(1).[7]

In sum, "the balance of the equities tilts" against reaching the merits of Kane's request under Rule 41(g). *See Ramsden*, 2 F.3d at 326. The Court must therefore "exercise 'caution and restraint,'" and refrain from exercising equitable jurisdiction to entertain Kane's Motion. *Id.*

**IV.    CONCLUSION**

It is therefore ordered that the Magistrate Judge's Report and Recommendation (dkt no. 138) is adopted in full. Kane's objection to the R&R (dkt. no. 139) is overruled. The Court declines to exercise equitable jurisdiction to entertain Kane's second motion for return of property. Kane's second motion for return of property (dkt. no. 128) is denied without prejudice.

ENTERED THIS 11th day of April 2016.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE

---

[7] Kane's argument is premised on his assumption that the procedures established in NRS § 465.110(1) apply to this Court, which he reaches by construing the statute's reference to "the court" as the federal district court. Kane does not address how this construction would implicate the *Erie* doctrine.

8